# Exhibit 3

John Wm. Butler, Jr., Esq.
John K. Lyons, Esq.
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM (ILLINOIS)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000
Attorneys for Debtors and Debtors-in-Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 02-83984-SSM |
| | ) | Jointly Administered |
| US AIRWAYS GROUP, INC., et al., | ) | Chapter 11 |
| | ) | Hon. Stephen S. Mitchell |
| Debtors. | ) | |

**DEBTORS' SECOND OMNIBUS OBJECTION TO CERTAIN (I) DUPLICATIVE CLAIMS, (II) AIRCRAFT DEBT CLAIMS (DUPLICATIVE; CONTINGENT AND OVERSTATED); (III) EQUITY CLAIMS (IV) UNSUBSTANTIATED CLAIMS (BOOKS AND RECORDS) (V) CONTINGENT AND UNLIQUIDATED CLAIMS, AND (VI) REDUCE AND ALLOW CLAIMS**

US Airways Group, Inc. ("Group") and seven of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby file their Second Omnibus Objection to Certain (i) Duplicative Claims, (ii) Aircraft Debt Claims (Duplicative; Contingent and Overstated); (iii) Equity Claims, (iv) Unsubstantiated Claims (Books and Records), (v) Contingent and Unliquidated Claims, and (vi) Reduce and Allow Claims ("Second Claims Objection") pursuant to section 502

of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3007, Local Bankruptcy Rule 3007-1, and the Debtors' First Amended Joint Plan of Reorganization (as it may be amended, supplemented, or otherwise modified), which is set for a confirmation hearing on or about March 18, 2003 (the "Plan"), and in support thereof states as follows:

## BACKGROUND

1. On August 11, 2002 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 12, 2002, this Court entered an Order providing for the joint administration of these cases, which have been consolidated for procedural purposes only.

2. On August 20, 2002, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these cases.

3. On September 6, 2002, this Court entered that certain Order Pursuant to 11 U.S.C. §§ 105(a), 501, 502, and 1111(a) and Rules 2002(a)(7), 3003(c)(3) and 5005(a) of the Federal Rules of Bankruptcy Procedure Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order") (Docket No. 406). Pursuant to the Bar Date Order this Court approved the form and manner of the bar date notice, which was attached as Exhibit 1 to the Bar Date Order (the "Bar Date Notice"). Pursuant to the Bar Date Order and the Bar Date Notice, the general bar date for filing proofs of claim in these bankruptcy cases was November 4, 2002 (the "Bar Date"). In addition to serving copies of the Bar Date Notice on all scheduled creditors, the Debtors published the Bar Date Notice in The New York Times (national edition) (Docket No. 1387), The Wall Street Journal (national and

---

[1] The Debtors are the following entities: US Airways Group, Inc., US Airways, Inc., Allegheny Airlines, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., MidAtlantic Airways, Inc., US Airways Leasing and Sales, Inc. and Material

European editions) (Docket Nos. 1388, 1389) and the USA Today (worldwide) (Docket No. 1390).

4. The Debtors maintain policies of insurance (the "Insurance Policies") that cover most, if not all, personal injury tort claims, subject to certain deductible limitations with respect to certain of the Insurance Policies and other customary policy exclusions. Nearly all of the Debtors' Insurance Policies provide "first dollar" coverage with respect to personal injury tort claims (i.e., the Debtors are not required to pay any deductible prior to the insurance coverage taking effect). On September 30, 2002, this Court entered the Order Authorizing the Debtor to Enter into Forms of Stipulation Modifying Automatic Stay and Compromising Claims ("Insurance Stipulation Order")(Docket No. 727). Pursuant to the Insurance Stipulation Order, the Debtors are permitted to enter into certain stipulations granting relief from the automatic stay to certain personal injury tort claimants, subject to certain notice and filing procedures, whereby such claimants completely release and waive any claims against the Debtors' estates and agree to limit any recovery to available insurance proceeds. The Debtors have entered into and filed many stipulations in accordance with the Insurance Stipulation Order and will continue to do so as and when appropriate.

5. The Debtors' claims agent received approximately 4,500 proofs of claim as of the Bar Date in these bankruptcy cases totaling approximately $61 billion in the aggregate.[2] The Debtors believe that many of these proofs of claim are patently illegitimate, duplicative, assert claims for which the Debtors maintain they have no liability, or are otherwise grossly overstated in amount.

6. On January 17, 2003, this Court entered an order (the "Disclosure Statement Order")(Docket No. 2068) approving the Debtors' Disclosure Statement with Respect to the

Services Company, Inc.

2 Pursuant to the terms of the Bar Date Notice, the Bar Date Order, 11 U.S.C. § 502(b)(9), and the terms of the Debtors' Plan, any proofs of claim filed after the Bar Date are disallowed as untimely unless and until such proofs of claim are subsequently deemed timely filed by separate order of the Court, after notice and hearing.

Debtors' First Amended Joint Plan of Reorganization ("Disclosure Statement")(Docket No. 2064) and set a hearing on confirmation of the Debtors' Plan for March 18, 2003. The Disclosure Statement Order also provides for certain procedures with respect to voting on, and objecting to, the Plan.

7. The Debtors' Disclosure Statement and Plan also provides that the anticipated **distribution rate to general unsecured creditors will be in the range of 1.2 to 1.8 cents on the dollar in stock** of the reorganized Debtors. Given the relatively small distribution to unsecured creditors in these bankruptcy cases, the Debtors hope and expect to resolve all disputed claims in the most cost-effective and expeditious manner possible.

8. On January 17, 2003, this Court granted the Debtors' Motion Pursuant to Sections 105(a), 362, 363, 502 and 503 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 to Establish an Alternative Dispute Resolution Program ("ADR Procedures") and to Permit the Debtors to Liquidate Certain Prepetition Claims (the "ADR Motion")(Docket No. 1693). The ADR Order allows the Debtors to invoke the ADR Procedures, in its sole discretion as the Debtors deem necessary and appropriate, to assist the Debtors in resolving disputed claims expeditiously. The ADR Order and ADR Procedures also provide for an efficient and expeditious method of approving claim settlements by filing a form of stipulation with the Court. The Debtors hope and expect to resolve all disputed claims within the time periods provided for in the Debtors' Plan through a combination of (a) the omnibus claim objection process, (b) the claim estimation process under Section 502(c) of the Bankruptcy Code, (c) the claim waiver procedure provided for in the Insurance Stipulation Order, and (d) the use of the ADR Order and ADR Procedures as and when appropriate. The Debtors reserve all of their rights to use any and all means at their disposal, or a combination thereof, to resolve all disputed claims in these bankruptcy proceedings as expeditiously as possible.

## APPLICABLE AUTHORITY

9. Pursuant to section 502(a) of the Bankruptcy Code, any claim for which a proof of claim has been filed shall be deemed allowed unless a party in interest objects. If an objection is filed, the Court, upon notice and a hearing, shall determine the amount of such claim. See 11 U.S.C. § 502(b).

10. The Debtors are entitled to object to claims, and this objection is filed in furtherance of the Debtors' Plan which is set for a confirmation hearing on March 18, 2003.

11. Jurisdiction to consider this matter is vested with the Court pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 502 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3007, Local Bankruptcy Rule 3007-1, and any applicable provisions of the Debtors' Plan or subsequent orders of this Court.

**OBJECTIONS TO CLAIMS**

12. As described herein, the Debtors seek in this Second Claims Objection: (a) the elimination and disallowance of certain duplicative claims; (b) the elimination and disallowance of certain aircraft debt claims that are either duplicative, contingent or overstated; (c) the elimination and disallowance of certain equity claims; (d) the elimination and disallowance of certain unsubstantiated claims based upon a review of the Debtors' books and records; (e) the elimination and disallowance of certain contingent and unliquidated claims, including premature contract rejection damage claims, contingent employee pension claims, and disputed and unliquidated litigation claims; and (f) the reduction and allowance of certain trade claims that have been reconciled by the Debtors.

13. Claims may be the subject of multiple objections herein for any of the reasons stated in the preceding paragraph and also may be subject to future objections.

14. The Debtors reserve the right to further object to any and all claims, whether or not the subject of this Second Claims Objection, for allowance, voting, and/or distribution

purposes, and on any other grounds, including but not limited to any reason set forth in previous omnibus objections. The Debtors reserve the right to modify, supplement and/or amend this Second Claims Objection as it pertains to any claim or claimant herein.

**Duplicative Claims**

15. Exhibit A contains a list of claims that were filed by creditors who filed two or more proofs of claim against the Debtors in essentially the same amount and based on essentially the same underlying claim, or filed claims that superceded or were replaced by amended claims.

16. The Duplicate Claims listed on Exhibit A under "Duplicate Claim" should be disallowed for all purposes in these bankruptcy cases. The claims listed under "Surviving Claim" on Exhibit A shall remain in effect and are not affected by this Second Claims Objection; *provided, however*, that such Surviving Claims may be the subject of a separate objection stated herein, or as subsequently filed hereinafter.

17. The Debtors reserve the right to object to the Duplicate Claims and the Surviving Claims on any other grounds at any time.

**Aircraft Debt Claims**
**(Duplicative; Contingent and Overstated)**

18. Exhibit B-1 contains a list of aircraft debt claims filed by multiple parties in different capacities with respect to the same underlying aircraft financing arrangement. These duplicative claims aggregate approximately $5.3 billion and should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

19. For each of the claims listed on Exhibit B-1 there is a surviving claim relating to the same underlying aircraft financing arrangement. In most instances, depending on the structure of the financing in question, the Debtors have determined that the claim of the "indenture trustee" should be the surviving claim, and that claims filed by an "owner trustee", "pass through trustee", or underlying debt holder with respect to the same financing

arrangement should be disallowed and expunged as duplicative. In those few instances where the Debtors were able to determine that the "indenture trustee" did not file a claim, the Debtors have not objected to a claim filed by an "owner trustee". Also, the Debtors have not objected to a claim filed by a "pass through trustee" where such trustee holds 100% of the underlying obligation and no other claims with respect to such underlying obligation have been filed by any other party. The Debtors reserve all of their rights to further object to the surviving aircraft debt claims not listed on Exhibit B-1 on any other grounds at any time to the extent they are unable to reconcile such claims at a later date.

20. Exhibit B-2 lists claims related to the Debtors' aircraft financing arrangements that are either contingent or grossly overstated in amount and cannot be reconciled with the Debtors' books and records. As such, the Debtors believe that the claims listed on Exhibit B-2 should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

21. The claims listed on Exhibit B-2 include claims by purported guarantors of the Debtors' aircraft financing arrangements. The Debtors are currently performing their obligations with respect to the aircraft financing arrangements in question such that these claims are clearly contingent and premature. As such, the Debtors believe that these claims should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

22. The claims listed on Exhibit B-2 also include claims of parties asserting tax indemnity claims or other fees relating to the Debtors' aircraft financing arrangements that the Debtors have been unable to reconcile to date from reviewing the Debtors' books and records. To the extent the Debtors have any liability for these claims the Debtors believe that such claims are grossly overstated in amount and should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

23. The claims listed on Exhibit B-1 and Exhibit B-2 are collectively referred to as the "Aircraft Debt Claims". The Debtors expressly reserve the right to further object to the Aircraft Debt Claims on any other grounds at any time.

24. For all the foregoing reasons, the Debtors believe that the Aircraft Debt Claims listed on Exhibit B-1 and Exhibit B-2 should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

**Equity Claims**

25. Exhibit C contains a list of claims filed by certain purported shareholders of Group common stock (the "Equity Claims").

26. The Debtors object to the Equity Claims to the extent such claims are asserted in dollar amounts. Holders of common stock of Group are not owed money from the Debtors and do not have "claims" against the Debtors. Rather, such parties may hold "interests" in Group that will be treated in accordance with the Debtors' Plan to the extent such parties are holders of such interests on the record date established in accordance with the Debtors' Plan. The Debtors' Plan and Disclosure Statement provides that the anticipated distribution rate to general unsecured creditors will be in the range of 1.2 to 1.8 cents on the dollar in stock of the reorganized Debtors, and that the "interests" of existing equityholders of Group common stock will be cancelled. As such, the Equity Claims will not receive any distribution in these bankruptcy cases under any circumstances and should be disallowed in their entirety.

27. The Debtors believe that the Equity Claims listed on Exhibit C attached hereto should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases, and expressly reserve the right to object to the Equity Claims on any other grounds at any time.

**Unsubstantiated Claims (Books and Records)**

28. Exhibit D includes unsubstantiated liabilities or dollar amounts that are not discernable from the Debtors' books and records ("Unsubstantiated Claims"). The Debtors believe that the parties asserting the claims on Exhibit D are simply not creditors of the Debtors, or have grossly overstated the amount of any possible claim. These Unsubstantiated Claims do not exist either because they have already been paid, or because there is no privity with the Debtors apparent from the Debtors' books and records. In addition, some of these

Unsubstantiated Claims assert amounts that vary significantly from any hypothetical calculation that might be discernable from the Debtors' books and records. For all the foregoing reasons, the Debtors believe that the Unsubstantiated Claims listed on Exhibit D should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases.

29. The Debtors expressly reserve the right to object to the Unsubstantiated Claims on any other grounds at any time.

**Contingent and Unliquidated**

30. Exhibit E includes contingent and unliquidated claims for which the Debtors' deny any liability ("Contingent/Unliquidated Claims"). Either the Debtors' liability has not arisen with respect to the Contingent/Unliquidated Claims because the relevant contingency has not arisen, or the Debtors' alleged liability (which has been denied by the Debtors) has not been determined as of the date of this Second Claims Objection.

31. Exhibit E includes premature contract rejection damage claims filed by counterparties to executory contracts, including lessors of real and/or personal property under leases that have not yet been assumed or rejected in these bankruptcy cases. These claims may be rendered moot if the Debtors assume such contracts or leases as part of the Plan. Moreover, consistent with the Bar Date Order, any counterparty to an executory contract that is ultimately rejected by the Debtors will have thirty (30) days after the effective date of such rejection to file a proof of claim for rejection damages. The claims listed on Exhibit E also include contingent employee pension claims relating to the Debtors' various pension plans that have not been terminated, and pursuant to which the various claimants are either not yet eligible to receive payments or are continuing to receive payments as and when due.

32. Exhibit E also includes numerous claims resulting from various litigation initiated, or threatened, against the Debtors, including but not limited to, personal injury tort claims and other miscellaneous alleged causes of action. The Debtors contend they have no liability for such claims. These claims include numerous frivolous labor and employment litigation claims,

alleged workers' compensation claims, alleged intentional tort claims, alleged breach of fiduciary duty claims, alleged civil antitrust claims, and various other litigation claims that are grossly overstated in amount even if liability for such claims is presumed (which liability is expressly denied by the Debtors). Moreover, to the extent any such litigation claims are completely covered by any of the Debtors' applicable insurance policies as described in paragraph 4 above, the Debtors object to such claimants receiving any distribution under the Plan since such claimants will recover the full amount of their claims, if they are so entitled, from available insurance proceeds.

33. For all the forgoing reasons, the Debtors believe the Contingent/Unliquidated Claims listed on Exhibit E should be disallowed and expunged in their entirety for all purposes in these bankruptcy cases. The Debtors expressly reserve the right to object to the Contingent/Unliquidated Claims on any other grounds at any time.

**Reduce and Allow**

34. Exhibit F includes claims, predominantly in the nature of trade payables, that the Debtors and their professionals have been able to conclusively reconcile to date either through an extensive examination of the Debtors' books and records, direct contact with the claimant that filed the proof of claim, or both. After an extensive review of these claims by the Debtors and the Debtors' professionals, the Debtors have determined that such claims should be reduced and allowed at this time consistent with the amounts set forth on Exhibit F attached hereto.

**NOTICE AND PROCEDURE**

35. Notice of this Second Claims Objection has been provided to parties-in-interest in accordance with the Amended Order Pursuant to 11 U.S.C. §§ 102 and 105(a), Bankruptcy Rules 2002(m) and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Omnibus Hearing Dates and Certain Notice, Case Management and Administrative Procedures (entered on August 13, 2002 at Docket No. 88) (the "Procedures Order"), including the holders

of the claims subject to this Second Claims Objection (the "Claimants"). The Debtors submit that the following methods of service upon the Claimants should be deemed by the Court to constitute due and sufficient service of this Objection: (a) service in accordance with Federal Rule of Bankruptcy Procedure 7004 and the applicable provisions of Federal Rule of Civil Procedure 4; (b) to the extent counsel for a Claimant is not known to the Debtors, by first class mail, postage prepaid, on the signatory of the Claimant's proof of claim form or other representative identified in the proof of claim form or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Claimant's behalf in the Debtors' bankruptcy cases.

36. To the extent any Claimant timely files and properly serves a response and request for hearing to this Second Claims Objection by February 28, 2003 as required by Local Bankruptcy Rule 3007-1(B) and applicable law, the Debtors will submit a scheduling order setting such claims for a status hearing at a subsequent omnibus hearing date, and will provide notice to the affected creditors of such hearing date. However, to the extent any Claimant fails to timely file and properly serve a response and request for hearing to this Second Claims Objection as required by Local Bankruptcy Rule 3007-1(B) and applicable law, the Debtors request that the Court enter an order, substantially in the form attached hereto as Exhibit G, disallowing and expunging, or reducing and allowing such claims for all purposes in these bankruptcy cases consistent with the exhibits attached to this Second Claims Objection.

37. The Debtors have previously filed their First Omnibus Objection to Certain (I) Duplicative Claims, and (II) Equity Claims on December 16, 2002 (the "First Claim Objection")(Docket No. 1614). The First Claim Objection was set for status conference on January 16, 2003 (Docket No. 1616) at which time the Court entered (a) an order disallowing and expunging those claims to which no response was filed (Docket No. 2101), and (b) a scheduling order setting hearing on the remaining claims for April 24, 2003 at 9:30 a.m. (Docket No. 2102).

WHEREFORE, the Debtors request the Court to enter an Order sustaining this Second Claims Objection and granting such other and further relief as the Court deems just and proper.

Dated: McLean, Virginia
January 24, 2003

Respectfully Submitted,

John Wm. Butler, Jr.
John K. Lyons
SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
333 W. Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

- and –

/s/ Douglas M. Foley
Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000
Attorneys for Debtors and Debtors-in-Possession

In re: US Airways et al

# Exhibit (E) Contingent and Unliquidated Claims

| CLAIM NUMBER | CREDITOR'S NAME AND ADDRESS | DATE CLAIM WAS FILED | AMOUNT OF CLAIM | DOCKETED DEBTOR |
|---|---|---|---|---|
| 171 | 1242270<br>RAKOVAN, STANLEY J<br>26 FRANCIS DRIVE<br>CORAOPOLIS PA 15108 | 10-07-2002 | $0.00 | 984 |
| 347 | 1242051<br>RAY, CHARLES<br>C/O JAMES E HARVIN, ESQ<br>INVESTMENT BUILDING<br>239 FOURTH AVENUE, S# 1707<br>PITTSBURGH PA 15222 | 10-10-2002 | $1,000,000.00 | 984 |
| 998 | 1242657<br>REARDON, ROBERT<br>6090 MADRA AVENUE<br>SAN DIEGO CA 92120 | 10-19-2002 | $0.00 | 987 |
| 747 | 1242661<br>REASOR, MARY HALL<br>14604 W CLARENDON AVENUE<br>GOODYEAR AZ 85338 | 10-16-2002 | $0.00 | 984 |
| 1575 | 1243535<br>REDDEN, DEBORAH SUE<br>C/O MURTAGH & CAHILL<br>ATTN JOHN W MURTAGH JR, ESQ<br>110 SWINDERMAN ROAD<br>WEXFORD PA 15090 | 10-24-2002 | $1,000,000.00 | 985 |
| 2631 | 1244370<br>REDERFORD, JANELLE<br>2202 ELMWOOD AVENUE<br>WARWICK RI 02888 | 10-31-2002 | $1,000,000.00 | 985 |
| 207 | 1241976<br>REISINGER, CAROLYN<br>2196 MERRELL AVE<br>BULLHEAD CITY AZ 86442 | 10-08-2002 | $0.00 | 985 |
| 3707 | 1245263<br>RELIANCE INSURANCE COMPANY<br>C/O OBERMAYER REBMANN MAXWELL ET AL<br>ATTN DOROTHY M CLAEYS, ESQ<br>ONE PENN CENTER 19TH FLR<br>1617 JFK BOULEVARD<br>PHILADELPHIA PA 19103 | 11-01-2002 | $31,167,024.00 | 984 |
| 19 | 1242089<br>RICKER, TIM<br>PO BOX 530<br>DARLINGTON PA 16115 | 08-23-2002 | $22,014.00 | 984 |
| 1544 | 1243810<br>RIDGLEY, DONALD<br>RR 1, BOX 427-A<br>MAROA IL 61756-9801 | 10-24-2002 | $0.00 | 984 |
| 2030 | 1243418<br>RIEGER, MARY FRANCES<br>217 RICHARD BURBYDGE<br>WILLIAMSBURG VA 23185 | 10-30-2002 | $70,600.00 | 985 |