# Exhibit 7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 02-83984-SSM |
| | ) | Jointly Administered |
| US AIRWAYS GROUP, INC., et al., | ) | Chapter 11 |
| | ) | Hon. Stephen S. Mitchell |
| Debtors. | ) | |

# FIRST AMENDED JOINT PLAN OF REORGANIZATION OF US AIRWAYS GROUP, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED

John Wm. Butler, Jr.
John K. Lyons
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM (ILLINOIS)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

Alesia Ranney-Marinelli
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

Lawrence E. Rifken (VSB No. 29037)
Douglas M. Foley (VSB No. 34364)
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

Attorneys for Debtors and Debtors-in-Possession

Dated: January 17, 2003

**1.21** **"Ballot"** means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders who are included in Classes that are Impaired under the Plan and entitled to vote under Article VI to accept or reject the Plan.

**1.22** **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as in effect on the date hereof.

**1.23** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, or such other court as may have jurisdiction over the Chapter 11 Cases.

**1.24** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.25** **"Bar Date"** means the deadline set by the Bankruptcy Court for filing proofs of claim or interest in the Chapter 11 Cases. For prepetition Claims (other than those of governmental units) and Interests, the Bar Date was November 4, 2002. For prepetition Claims of governmental units, in accordance with section 502(b)(9) of the Bankruptcy Code, the Bar Date is February 7, 2003.

**1.26** **"Bar Date Order"** means the order entered by the Bankruptcy Court on September 5, 2002, establishing the Bar Dates.

**1.27** **"Bilateral Cargo Prorate Agreements"** means those agreements, also commonly referred to as Special Prorate Agreements (SPA), that establish specifically-negotiated settlement amounts for cargo that has traveled across two carriers.

**1.28** **"Bilateral Passenger Prorate Agreements"** means those agreements, also commonly referred to as Special Prorate Agreements (SPA), that establish specifically-negotiated settlement amounts for tickets covering travel across two carriers.

**1.29** **"Business Day"** means any day, excluding Saturdays, Sundays and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

**1.30** **"Cargo Multilateral Interline Traffic Agreements"** means those agreements documenting the terms, including, without limitation, documentation, liability and payment for services practices, of cargo acceptance among airlines.

**1.31** **"Cash"** means legal tender of the United States of America and equivalents thereof.

**1.32** **"Causes of Action"** means any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Claims unless otherwise waived or released by the Debtors or the Reorganized Debtors.

1.33 **"Certificate"** has the meaning ascribed to it in Section 9.4 hereof.

1.34 **"Certificates of Incorporation and Bylaws"** means the Certificates of Incorporation and Bylaws of the Reorganized Debtors, in substantially the forms attached hereto as Exhibits C1-C8 and Exhibits D1-D8, which Certificates of Incorporation and Bylaws shall be in a form reasonably acceptable to the Plan Sponsor and the Creditors' Committee.

1.35 **"Chapter 11 Cases"** means the chapter 11 cases of the Debtors pending in the Bankruptcy Court and being jointly administered with one another under Case No. 02-83984, and the phrase "Chapter 11 Case" when used with reference to a particular Debtor shall mean the particular case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court.

1.36 **"Claim"** means a claim against one of the Debtors (or all or some of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.37 **"Claimholder"** means a holder of a Claim.

1.38 **"Claims Agent"** means Logan & Company, Inc., which maintains an office at 546 Valley Road, Upper Montclair, New Jersey 07043, Attention: US Airways Department.

1.39 **"Claims Objection Deadline"** means that day which is 180 days after the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be from time to time extended by the Bankruptcy Court, without further notice to parties-in-interest.

1.40 **"Class"** means a category of Claimholders or Interestholders described in Article III of the Plan.

1.41 **"Class A Common Stock"** means the shares of Class A Common Stock of Reorganized Group, authorized under Section 7.5 and Section 7.9 of the Plan and under the certificate of incorporation of Reorganized Group. The number of issued and outstanding shares of Class A Common Stock as of the Effective Date shall be fifty-two million four hundred thousand (52,400,000), and the number of authorized shares as of the Effective Date shall be two hundred million (200,000,000). A summary of selected terms of the Class A Common Stock is attached hereto under Exhibit L.

1.42 **"Class A Preferred Stock"** means the shares of Class A Preferred Stock of Reorganized Group authorized under Section 7.5 and Section 7.9 of the Plan and under the certificate of incorporation of Reorganized Group. The number of issued and outstanding shares of Class A Preferred Stock as of the Effective Date shall be eighteen million nine hundred fifty thousand (18,950,000), and the number of authorized shares as of the Effective Date shall be twenty-five million (25,000,000). A summary of selected terms of the Class A Preferred Stock is attached hereto under Exhibit L.

1.43 **"Class A-1 Warrants"** means the Class A-1 Warrants of Reorganized Group authorized under Section 7.5 and Section 7.9 of the Plan and under the certificate of incorporation of Reorganized Group. The number of issued and outstanding Class A-1 Warrants as of the Effective Date shall be eighteen million nine hundred fifty thousand (18,950,000), and the number of authorized Class A-1 Warrants as of the Effective Date shall be twenty-five million (25,000,000). A summary of selected terms of the Class A-1 Warrants is attached hereto under Exhibit L.

1.44 **"Class B Common Stock"** means the shares of Class B Common Stock of Reorganized Group, authorized under Section 7.5 and Section 7.9 of the Plan and under the certificate of incorporation of Reorganized Group. The number of issued and outstanding shares of Class B Common Stock as of the Effective Date shall be five million (5,000,000), and the number of authorized shares as of the Effective Date shall be five million (5,000,000). A summary of selected terms of the Class B Common Stock is attached hereto under Exhibit L.

**10.3 Substantial Contribution Compensation and Expenses Bar Date.** Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court, on or before the forty-fifth (45th) day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors and the Plan Sponsor and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

**10.4 Other Administrative Claims.** All other requests for payment of an Administrative Claim (other than as set forth in Sections 10.2 and 10.3 of this Plan and subject to the final sentence of this Section 10.4) must be filed, in substantially the form of the Administrative Claim Request Form attached hereto as Exhibit H, with the Claims Agent and served on counsel for the Debtors, the Plan Sponsor, the ATSB and the Post-Confirmation Committee no later than forty-five (45) days after the Effective Date; provided, however, that requests for payment of an Administrative Claim with respect to postpetition personal injury or wrongful death Claims shall be filed no later than one hundred eighty days after the Effective Date and shall be served on the same Persons listed above. Any request for payment of an Administrative Claim pursuant to this Section 10.4 that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors. The Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is (i) for goods or services (including wages, salaries, commissions, and trade payables) paid or payable by the Debtors in the ordinary course of business, (ii) previously has been Allowed by Final Order of the Bankruptcy Court or (iii) is required to be made in accordance with the terms and provisions of the GE Global Restructuring Agreement.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**11.1 Revesting of Assets.** Except as otherwise explicitly provided in this Plan, including, without limitation, Section 9.6 of this Plan, on the Effective Date all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in each of the Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders (other than as expressly provided herein); provided, however, that notwithstanding this Section 11.1, Aircraft Equipment to the extent it is subject to a continuing agreement executed pursuant to section 1110 of the Bankruptcy Code that expires after the Effective Date shall not revest in the applicable Debtor until the earlier of (a) the expiration of the applicable section 1110 extension executed under to an agreement executed pursuant to section 1110 of the Bankruptcy Code or (b) entry into a new or amended lease concerning such Aircraft Equipment. As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

**11.2 Discharge of the Debtors.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account

of such Claims, rights, and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all liabilities of and Interests in the Debtors, subject to the Effective Date occurring.

**11.3 Compromises and Settlements.** In accordance with Section 9.6 of this Plan and consistent with Section 14.4(b) of this Plan, pursuant to Bankruptcy Rule 9019(a), without further order of the Bankruptcy Court, the Debtors may compromise and settle various (a) Claims against them and (b) Causes of Action that they have against other Persons. The Debtors expressly reserve the right to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors as contemplated in Section 11.1 of this Plan.

**11.4 Release of Certain Parties.**

**(a)** Pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession, for and on behalf of its Estate, shall release and discharge and be deemed to have released and discharged all Released Parties for and from any and all (i) Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence or event in any manner related to any such Claims, Interests, restructuring or the Chapter 11 Cases and (ii) Avoidance Claims (except Avoidance Claims relating to individual supplemental retirement agreements between the Debtors and insiders as defined under section 101(31) of the Bankruptcy Code). Notwithstanding the foregoing, nothing in this Plan releases or shall be deemed to release any of the Debtors or the Plan Sponsor or its Affiliates from their obligations under the Investment Agreement, the ATSB Loan Agreement or the transactions contemplated thereby.

**(b)** No provision of this Plan or of the Confirmation Order, including, without limitation, any release or exculpation provision, shall modify, release or otherwise limit the liability of any Person not specifically released hereunder, including, without limitation, any Person that is a co-obligor or joint tortfeasor of a Released Party or that otherwise is liable under theories of vicarious or other derivative liability.

**(c)** The Reorganized Debtors and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

**11.5 Release by Holders of Claims and Interests. On the Effective Date (a) each Person that votes to accept the Plan, to the fullest extent permissible under applicable law, as such law may be extended subsequent to the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, New Equity and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan, and (b) GECC under the GECC 2001 Financing Agreement to the extent that GECC votes to accept the Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged each Released Party from any Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Interest of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this Section 11.5 shall not release any Released Party from**

**any Cause of Action existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, or (iii) any criminal laws of the United States or any domestic state, city or municipality provided, further, however, that this Section 11.5 shall not release any Claims arising under §§ 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended.**

**11.6 Setoffs.** The Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such Claimholder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Claimholder.

**11.7 Satisfaction of Subordination Rights.** All Claims against the Debtors and all rights and claims between or among Claimholders relating in any manner whatsoever to distributions on account of Claims against the Debtors, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Claimholders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder by reason of any subordination rights or otherwise, so that each Claimholder shall have and receive the benefit of the distributions in the manner set forth in the Plan.

**11.8 Exculpation and Limitation of Liability.** Except as otherwise specifically provided in this Plan, the Debtors, the Reorganized Debtors, the Creditors' Committee, the members of the Creditors' Committee in their capacities as such, the DIP Lenders, the DIP Agent, the Plan Sponsor, any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability to one another or to any Claimholder or Interestholder, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, negotiation and filing of the Plan, filing the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, recklessness or gross negligence and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Notwithstanding the foregoing, nothing in this Plan releases or shall be deemed to release the Debtors, the Reorganized Debtors, the Plan Sponsor or their respective Affiliates from their obligations under the Investment Agreement, the ATSB Loan Agreement or the transactions contemplated thereby.

**11.9 Indemnification Obligations.** Except as specifically provided in this Plan and in the Indemnification Order, in satisfaction and compromise of the Indemnitees' Indemnification Rights: (a) all Indemnification Rights, except (i) those based upon any act or omission arising out of or relating to any Indemnitee's service with, for, or on behalf of the Debtors on or after the Petition Date, (ii) those held by Persons who served during the Chapter 11 Cases as the Debtors' respective officers, directors, or employees and/or serve in such capacities (or similar capacities) after the Effective Date and (iii) indemnification obligations assumed pursuant to the Indemnification Order (the "Continuing Indemnification Rights"), shall be released and discharged on and as of the Effective Date, provided that the Indemnification Rights excepted in subparts (i), (ii) and (iii) shall remain in full force and effect on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Chapter 11 Cases; (b) the Debtors or the Reorganized Debtors, as the case may be, covenant to purchase and maintain director and officer insurance providing coverage for those Indemnitees currently covered by such policies for a period of two years after the Effective Date insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for, or on behalf of the Debtors in at least the scope and amount as currently maintained by the Debtors and in accordance with the further requirements of Section 8.01(n) of the Investment Agreement (the "Insurance Coverage"); (c) the insurers are authorized to pay any professional fees and expenses

incurred in connection with any action relating to any Continuing Indemnification Rights; and (d) the Debtors or the Reorganized Debtors, as the case may be, hereby indemnify Indemnitees and agree to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy.

**11.10 Injunction.** The satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

## ARTICLE XII

## CONDITIONS PRECEDENT

**12.1 Conditions to Confirmation.** The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 12.4 of the Plan:

**(a)** The Bankruptcy Court shall have approved a disclosure statement with respect to the Plan in form and substance acceptable to the Debtors, in their sole and absolute discretion, and reasonably acceptable to the Plan Sponsor.

**(b)** The Confirmation Order shall be in form and substance acceptable to the Debtors, in their sole and absolute discretion, and reasonably acceptable to the Plan Sponsor and the ATSB.

**12.2 Conditions to Consummation for All Debtors.** The Effective Date shall occur on or prior to March 31, 2003, unless such date is extended by the Debtors. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.4 of the Plan:

**(a)** The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption of unexpired leases and executory contracts by the Debtors as contemplated by Section 8.1 hereof.

**(b)** All conditions precedent to the funding under the Investment Agreement shall have been satisfied or waived in accordance with the terms thereof and the funding under the Investment Agreement shall have occurred.

**(c)** The ATSB Loan shall have been executed and delivered by all of the parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and funding under the ATSB Loan Agreement shall have occurred.

**(d)** The tentative agreements reached in December 2002, between USAI and the employee groups represented by AFA, CWA, IAMAW and TWU modifying earlier restructuring agreements to incorporate additional cost reductions shall have been ratified and executed by the parties thereto.

**(e)** Requisite actions shall have been taken such that the pension funding requirements with respect to the employee defined benefit pension plans maintained by USAI shall be consistent with the Pro Forma Financial Projections appended as Appendix C to the Disclosure Statement.