UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                               )
Janelle Rederford              )
          Plaintiff,           )
                               )
     v.                        )    C.A. No. 08-164S
                               )
US Airways, Inc.,              )
             Defendant.        )
_____)
```

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

The matter before the Court is a motion to dismiss for failure to state a claim filed by the Defendant, US Airways, Inc., ("US Airways") against the complaint filed by Plaintiff, Janelle Rederford ("Plaintiff"). After consideration of the parties' submissions and oral argument, the Defendant's motion is GRANTED.

I.   Background

On January 31, 2002, US Airways terminated Plaintiff from her twenty-four year employment as a customer service representative. The purported reason for Plaintiff's termination centers around her medical condition.[1] Consequently, Plaintiff seeks relief in this

---

[1] Plaintiff suffers from Systemic Lupus Erythematosus ("Lupus"). Lupus is an inflammatory connective tissue disease with variable features, frequently including fever, weakness and fatigability, joint pains or arthritis resembling rheumatoid arthritis, diffuse erythematous skin lesions on the face, neck, or upper extremities. Stedman's Medical Dictionary 1036-37 (27th ed. 2000).

Court for alleged violations of the Americans with Disabilities Act.

For purposes of this motion, the specific allegations surrounding Plaintiff's termination are assumed to be true, but are ultimately not outcome determinative. The facts that do matter for purposes of disposing of this motion are set forth below, and are determined from the records of prior proceedings.

On August 11, 2002, US Airways filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code, in the Eastern District of Virginia. As part of the bankruptcy proceeding, the Bankruptcy Court required US Airways to serve the Plaintiff with a notice of a bar date for filing proofs of claim and a proof of claim form. The Bankruptcy Court records indicate that Plaintiff was served these documents on October 1, 2002 and returned her completed proof of claim form on October 31, 2002 setting forth her allegations of discrimination.

On January 24, 2003, US Airways filed an objection to the class of claims involving disputed and unliquidated litigation claims. Plaintiff's claim fell within the scope of this objection. As required, US Airways served Plaintiff with notice of its objection on January 28, 2003. The notice informed Plaintiff that in order for her claim to proceed she would need to file a written response and request a hearing by February 28, 2003. The notice

further stated that failure to file a response and request a hearing would result in disallowance of her claim.

The Plaintiff failed to file any response or request a hearing, and on March 17, 2003, the Bankruptcy Court entered an order sustaining US Airways' objection.  Pursuant to the Court's order, Plaintiff's claim was disallowed.  On March 18, 2003, the Bankruptcy Court confirmed US Airways' plan of reorganization and entered an order discharging all claims originating before the plan's effective date of March 31, 2003.  The order also permanently enjoined any claimant from pursuing the disallowed claims.

II.  Standard of Review

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a court must determine whether the complaint states any claim upon which relief can be granted.  In so doing, the court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded factual allegations as true and giving the plaintiff the benefit of all reasonable inferences.  Buck v. Am. Airlines, Inc., 476 F.3d 29, 32-33 (1st Cir. 2007); In Re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

In deciding a motion to dismiss, however, a court is not always limited to the facts alleged in the plaintiff's complaint. The First Circuit Court of Appeals has suggested a "practical,

commonsense approach" is best for determining what materials may be properly considered on a motion to dismiss. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). Under this approach, a court may properly consider not only the complaint, but also the "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). In addition, a court may appropriately consider any document "integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint." Id. See also Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005) (explaining that although allegations of complaint generally are taken as true, court may consider facts subject to judicial notice, implications from documents incorporated into complaint, and concessions in complainant's response to motion to dismiss); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (stating that a district court may look to matters of public record in deciding a 12(b)6 motion).

In this case, Plaintiff's complaint attached no documents pertaining to US Airways' bankruptcy as exhibits nor did it expressly refer to the bankruptcy. The Plaintiff did, however, acknowledge US Airways' bankruptcy in her reply to Defendant's motion. Furthermore, Plaintiff has not challenged the authenticity

of any of the exhibits Defendant submitted with its motion to dismiss. <u>See</u> <u>Beddall</u>, 137 F.3d at 17 (emphasizing the fact that plaintiff neither challenged the authenticity of the document nor moved to strike it from the record).

Because it is within the Court's discretion on a 12(b)(6) motion to consider materials that are integrally linked to the complaint, capable of judicial notice, and acknowledged by a party opposing the motion, the Court in this case will consider those documents which relate to the Defendant's bankruptcy and were attached to its motion.

III. Discussion

Since matters relating to US Airways' 2002/2003 bankruptcy may be properly considered at this stage, for the reasons discussed above, Plaintiff's first argument urging the Court to limit its analysis to the four corners of the complaint is moot.

Thus, the central issue is what effect, if any, does US Airways' bankruptcy have on the viability of Plaintiff's claim. Section 1141 of the Bankruptcy Code describes the general effects of the confirmation of a bankruptcy plan.  In relevant portion, this section instructs that "the provisions of a confirmed plan bind the debtor, . . . and any creditor, . . . whether or not the claim or interest of such creditor, . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).  Section 1141 further states "[e]xcept as

5

otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d). Section 524(a)(2) of the Bankruptcy Code reinforces the iron-clad nature of the section 1141 statutory discharge by declaring that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

Contained within the exhibits to Defendant's motion to dismiss are the relevant portions of the plan and the order confirming the plan. Consistent with Section 1141, these documents make clear that any claims that arose against US Airways' prior to the effective date of March 31, 2003 were discharged unless otherwise specifically provided.

A plain reading of the statute and the plan allow for only one conclusion: Plaintiff's claim was discharged in US Airways' bankruptcy and she is forever barred from pursing it. She therefore no longer has a claim and her complaint must be dismissed.

In an attempt to work around the preclusive effect of the Defendant's bankruptcy, Plaintiff argues that her claim is not barred because it falls outside the definition of the term "claim"

6

as defined in Section 101 of the Bankruptcy Code.[2]  This argument, however, falls far short of the mark.  First, the term "claim" is broadly defined by the Bankruptcy Code.[3]  See Ohio v. Kovacs, 469 U.S. 274, 279 (1985) (confirming that Congress desired a broad definition of claim).

Secondly, under any fair reading, Plaintiff's allegations of discrimination squarely fit within the statutory definition. Plaintiff is seeking money damages and equitable relief in the form of reinstatement stemming from her alleged wrongful termination. See O'Loghlin v. County of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (agreeing with district court that a plaintiff's ADA claim was discharged in bankruptcy); see also McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 740 (8th Cir. 1996) (holding ADA claim

---

[2] In support of this proposition, Plaintiff has failed to provide any useful authority.  She generally cites Golden State Bottling Co. v. N.L.R.B., 414 U.S. 168 (1973), however, nowhere in this case does the Supreme Court even mention the term bankruptcy. Her reliance on this and her other authorities is clearly misplaced.

[3] Section 101 defines "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

was discharged); <u>Kresmery v. Service Am. Corp.</u>, 227 B.R. 10, 15 (D. Conn. 1998).

The only possible argument that would allow Plaintiff to avoid this conclusion is if her equitable claim for reinstatement would not give rise to a right to payment.  The Bankruptcy Code's definition of claim only includes equitable remedies if they "[give] rise to a right to payment."  11 U.S.C. 101(5)(B). Therefore, according to the Plaintiff, to the extent the remedy of reinstatement does not include payment of money her claim should be allowed to proceed.  However, not even this extreme parsing of her claim can save the Plaintiff's suit.

The Supreme Court, on at least two occasions, has stated that the "plain meaning of a right to payment is nothing more nor less than an enforceable obligation."  <u>F.C.C. v. NextWave Personal Commc'ns Inc.</u>, 537 U.S. 293, 294 (2003) (internal quotations and citation omitted); <u>Pennsylvania Dept. of Public Welfare v. Davenport</u>, 495 U.S. 552, 559 (1990).  Consistent with this definition, lower courts have held an equitable remedy will "give rise to a right of payment" and therefore be deemed a "claim," when the payment of monetary damages is an alternative to the equitable remedy.  <u>In Re Matter of Udell</u>, 18 F.3d 403, 407 (7th Cir. 1994) (holding "one example of a 'claim' is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment"); <u>Air Line Pilots Ass'n v. Cont'l Airlines</u>, 125 F.3d 120,

135-36 (3d Cir. 1997) (analogizing to reinstatement when explaining that the airline pilots' equitable remedy of seniority integration could give rise to a right to payment and thus fall within the Bankruptcy Code's definition of claim); see also In Re The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007) (stating that because a damage claim is an alterative to a request for specific performance the definition of claim would arguably include the equitable remedy); Cf. In Re Ben Franklin Hotel Assocs., 186 F.3d 301, 305 (3d Cir. 1999) (holding that claim for reinstatement into a partnership agreement is not a claim when the partnership was comprised of a unique business opportunity not capable of valuation). Thus, where an award of monetary damages is a viable alternative to the equitable remedy sought, in this case reinstatement, the claim of equitable relief should be treated as a claim under section 101(5)(B).

While this Court's research has revealed no case that specifically addresses whether a claim for reinstatement to one's job constitutes a right to payment under the Bankruptcy Code, it is a long held tenant of employment law that money damages may substitute for reinstatement when reinstatement would be impractical. Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 91 (1st Cir. 2006); Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 67 (1st Cir. 2005); Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 380 (1st Cir. 2004) (front pay should

not be awarded unless reinstatement is impracticable or impossible); see also Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001); see generally Rothstein et al., Employment Law §§ 2:32, at 261-62, 9:23, 815-22 (3d ed. 2004) (discussing front pay and reinstatement in the context of available remedies to wrongful terminated employee). Moreover, if, as the Third Circuit explained in Air Line Pilots Ass'n, the equitable remedy of reinstatement to a seniority ladder can be reduced to a monetary amount, then clearly reinstatement to one's job can be. Air Line Pilots Ass'n, 125 F.3d at 135-36. Because these authorities make clear that a claim for reinstatement can be reduced to a quantifiable dollar amount, then it inexorably follows that such a claim does give rise to a right to payment within the meaning of section 101(5)(B) of the Bankruptcy Code.

The practical effect of all this discussion is that the underlying allegations of Plaintiff's complaint clearly constitute a claim under the Bankruptcy Code and her argument to the contrary is a non-starter.

Plaintiff's remaining arguments advance two alternative theories (judicial estoppel and unclean hands) as to why her complaint should not be dismissed, and can be dispatched quickly.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

<u>Beaudette v. Louisville Ladder, Inc.</u>, 462 F.3d 22, 26 (1st Cir. 2006) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001)). Judicial estoppel is designed to protect the judicial process rather than litigants.

Here, the judicial process needs no protection. US Airways has not taken a contradictory position in this litigation from its position in the Bankruptcy Court. Plaintiff hangs her hat on US Airways' reference to an insurance policy in its objection to the claims filed with the Bankruptcy Court.[4] Plaintiff argues these

---

[4] The relevant sections Plaintiff claims were misleading are paragraphs 4 and 32.  Paragraph 32 states:

> Exhibit E also includes numerous claims resulting from various litigation initiated, or threatened, against the Debtors, including but not limited to, personal injury tort claims and other miscellaneous alleged causes of action. **The Debtors contend they have no liability for such claims.**  These claims include numerous frivolous labor and employment litigation claims, alleged workers' compensation claims, alleged intentional tort claims, alleged breach of fiduciary duty claims, alleged civil antitrust claims, and various other litigation claims that are grossly overstated in amount even if liability for such claims is presumed **(which liability is expressly denied by the Debtors)**.  Moreover, to the extent any such litigation claims are completely covered by any of the Debtors' **applicable insurance policies as described in paragraph 4 above**, the Debtors object to such claimants receiving any distribution under the Plan since such claimants will recover the full amount of their claims, if they are so entitled, from available insurance proceeds.  (emphasis added).

Paragraph 4 states:

> The Debtors maintain policies of insurance (the "Insurance Policies") that cover most, if not all, **personal injury tort claims**, subject to certain

references constitute the necessary contrary position.  Read in context, however, it is clear that US Airways' reference to insurance policies simply informed the Bankruptcy Court that the policies, and not the bankruptcy plan, should satisfy claimants in the event they prevail on their claims.  Furthermore, the insurance policies Plaintiff assuredly believes would be available avenues of recovery for her are clearly limited to personal injury tort claims by the plain language of paragraph 4.  Nothing in either reference can be viewed as contradictory to positions taken in this litigation.

Likewise, Plaintiff's attempt to use the doctrine of unclean hands must fail.  Generally the doctrine is only applicable in cases where one party has engaged in misconduct.  <u>Dr. Jose S. Belaval, Inc. v. Perez-Perdomo</u>, 488 F.3d 11, 15 (1st Cir. 2007). In this case, none of the actions of US Airways during the bankruptcy proceedings appear to constitute misconduct.  US Airways kept Plaintiff apprised of all crucial filing deadlines and provided her with all the corresponding information she needed to protect her rights.  The only action in this case which resulted in prejudice to the Plaintiff was her own, when she failed to reply to

---

deductible limitations with respect to certain of the Insurance Policies and other customary policy exclusions. (emphasis added).

the notice of the Bankruptcy Court.

IV.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


_____
William E. Smith
United States District Judge
Date: 11/19/08